# EXHIBIT 4



Elyse Shimada
dir 202 898 5877
eshimada@hollingsworthllp.com

April 23, 2021

**VIA ELECTRONIC MAIL**

Raymond C. Silverman
Parker Waichman LLP
6 Harbor Park Drive
Port Washington, New York 11050
rsilverman@yourlawyer.com

   Re: *Colella v. NPC*, No. 3:20-CV-00367 (D. Conn.)

Dear Raymond:

   We write to respond to your letter dated April 6, 2021, containing plaintiffs' new demands that provide us for the first time with an understanding of the scope for plaintiffs' demands as to NPC's document productions in these cases. The letter included the first identification by plaintiffs of fifty-seven current and former Novartis employees for whom plaintiffs request productions of documents,[1] a revised set of search terms that plaintiff proposes using to search those custodians' documents,[2] and a list of non-custodial data sources from which plaintiffs demand productions. This letter is to respond specifically to plaintiffs' request for document productions from the fourteen non-custodial data sources identified in Appendix C. NPC will separately respond to your proposed search terms and proposed custodian list.

   NPC notes that it has already produced documents from eight of the fourteen non-custodial sources listed in Appendix C, including, where indicated, data from an additional seven predecessor system(s). NPC will be producing additional documents from these eight non-custodial sources and a ninth additional non-custodial source, as described below. The productions to date are part of the more than 480,000 documents (comprising of more than 530 gigabytes of data and an estimated more than 10.8 million pages) already produced to plaintiffs from custodial and non-

---

[1] Not all of these individuals are or were employees of Novartis Pharmaceuticals Corporation.

[2] It is unclear the extent to which plaintiffs intend for their requested search terms to also apply to other non-custodial data sources. As we have previously explained, many of the non-custodial sources identified are not suited for searching using the complex string of hundreds of terms that plaintiffs propose, and in those instances, if a production is to be made from such sources, it will be using other alternative scoping methods that are appropriate for the particular data source.

Raymond C. Silverman
April 23, 2021
Page 2



custodial sources. The eight sources from plaintiffs' list of fourteen non-custodial sources from which NPC has produced or will produce documents are:

1. *Vantage and its legacy systems, Edge and Compass*. NPC will produce to plaintiffs' counsel the sales force call notes for visits made to each plaintiff's prescribing physicians from these systems on a case-specific basis. NPC searched for and will produce all entries involving Tasigna® for these providers from the date of Tasigna®'s first approval in 2007 through the respective plaintiff's last date of use of Tasigna®. NPC will make additional productions on a case-specific basis to counsel for their later filed cases and if new prescribers are identified.

2. *CareConnect and its legacy system, MediCUS/SIEBEL*. NPC produced a listing of non-medical inquiries from and responses to plaintiffs' prescribing doctors from CareConnect and the Medical Inquiry Response Library Interconnecting Novartis (Midocs) and its legacy system (MediCUS/SIEBEL), searching for known Tasigna® prescribers. NPC searched for all entries involving Tasigna® for these providers from the date of Tasigna®'s first approval in 2007 through the respective plaintiff's last date of use of Tasigna®. The listing of inquiries and responses are located at TPROD09255467-TPROD09255469. NPC is searching for underlying documentation for NPC's responses to identified prescribers from CareConnect and Midocs. To the extent NPC can locate non-objectionable materials, we will produce them. NPC will make additional productions on a case-specific basis to counsel for their later filed cases and if new prescribers are identified.

3. *MIDUS and its legacy system, MediCUS/SIEBEL*. NPC produced a listing of medical inquiries from and responses to plaintiffs' prescribing doctors from MIDUS and the Medical Inquiry Response Library Interconnecting Novartis (Midocs) and its legacy system, searching for known Tasigna® prescribers. NPC searched for all entries involving Tasigna® for these providers from the date of Tasigna®'s first approval in 2007 through the respective plaintiff's last date of use of Tasigna®. The listing of inquiries and responses are located at TPROD09255467-TPROD09255469. NPC is searching for underlying documentation for NPC's responses to identified prescribers from MIDUS and Midocs. To the extent NPC can locate non-objectionable materials, we will produce them. NPC will make additional productions on a case-specific basis to counsel for their later filed cases and if new prescribers are identified.

4. *Regulatory Submission and Master Trial File Repository (SubWay)*. The Regulatory Documentation and Information System (REDI), the Clinical Documentation and Information System (CREDI), and the Preclinical Documentation Information System (PREDI) have been consolidated into SubWay. NPC produced or will produce documents from REDI, CREDI, and PREDI for NDA 22068 and IND Nos. 69764,

Raymond C. Silverman
April 23, 2021
Page 3



105932, 117629, 117722, and 117834 in full without the use of any search terms. NPC produced documents from PREDI through December 31, 2015 and will update that production to bring it to present. The PREDI production is located at TPROD09255470-TPROD09260258. NPC will also produce documents from CREDI through December 31, 2015 shortly, and will update that production to bring it to present.

5. *KNIPPER and its legacy system, SAMS.* These two systems contain data about product samples that went to health care practitioners. NPC will produce from these two sources searching for known Tasigna® prescribers. NPC searched for all Tasigna® samples given to these known prescribers from the date of Tasigna®'s first approval in 2007 through the respective plaintiff's last date of use of Tasigna®. NPC will make additional productions on a case-specific basis to counsel for their later filed cases and if new prescribers are identified.

6. *Concerto.* In addition to the above, NPC is planning to produce health care practitioner spend data from Concerto for prescribing physicians. NPC searched for all entries regarding Tasigna® for prescribing physicians from the date of Tasigna®'s first approval in 2007 through the respective plaintiff's last date of use of Tasigna®. NPC will provide the information to counsel on a case-specific basis.

7. *ESOPS.* NPC is also planning to update the collection of standard operating procedures (SOPs) from ESOPS that was included in the 10.8 million pages already provided to plaintiff. The SOPs previously produced are located at TPROD09227749-TPROD09228063 and TPROD08095910-TPROD08096548.

8. *ARGUS.* NPC previously produced ARGUS output under the custodian name Novartis – Adverse Events. The materials are located at TPROD00002497-TPROD00004084 and TPROD01591456-TPROD01598091. NPC also produced underlying adverse event files regarding plaintiffs' cardiovascular events. The underlying adverse event files are located at: TPROD09255390-TPROD09255466. NPC will make additional productions of adverse event files on a case-specific basis to counsel for their later filed cases and if new prescribers are identified. NPC will also search ARGUS and produce an updated listing of cardiovascular adverse events reported to the company in patients receiving Tasigna®.

9. *oMAP.* In addition to the above sources listed in plaintiffs' letter, NPC will produce an index of approved Tasigna® promotional materials to plaintiffs' counsel from oMAP, a source that was not included in plaintiffs' Appendix C, but that we include as it appears to fall within the scope of plaintiffs' document requests. NPC previously produced promotional materials under the Novartis-oMAP custodian, which are located at TPROD09228064-TPROD09234551. NPC notes that there is a considerable manual burden to pulling each resource listed in the index, which must be done on an item-by-

Raymond C. Silverman
April 23, 2021
Page 4



item basis. Accordingly, NPC objects to producing every approved resource as unduly burdensome and not proportional to the needs of the case. However, NPC will meet and confer about the appropriate scope to update the production of approved promotional materials for 2015 to present.

Plaintiffs' list of sources includes five for which NPC has been unable to determine what discoverable information plaintiffs believe may exist that is not already addressed by other data sources:

10. *Documentum*
11. *TrackWise*
12. *E360*
13. *SAS Database*
14. *"Clinical Safety Database."*

We are not aware of a data source by the name "Clinical Safety Database." Rather, we are aware of (1) the ARGUS safety database and (2) CREDI, from both of which NPC has made or will make productions, as described above. To the extent plaintiff has something other than CREDI and ARGUS in mind, please provide us additional information. NPC is willing to confer further regarding these data sources, but plaintiffs need to identify what specifically is sought and how it is not already addressed by current or upcoming productions from the nine non-custodial sources from which NPC already has produced or will produce documents (or the custodial files which have been produced for fourteen custodians, or will be produced for additional employees). A mere list of purported data sources, in isolation without any explanation, is not how discovery operates.[3] NPC is willing to discuss producing documents from certain data sources to plaintiffs provided the source contains relevant information that is not unduly burdensome to produce, is proportional to the needs of the case, and is not duplicative. But NPC is not required to guess at what plaintiffs want.

NPC objects to plaintiffs' demand for one of the sources:

15. *Commercial Data Lake.* NPC objects to producing from this source as it contains third-party prescription data of questionable relevance that NPC is not contractually permitted to share, and accordingly, an attempt to collect and produce data from this source is unduly burdensome and not proportional to the needs of this case. We are willing to confer regarding this data source, but plaintiffs need to identify what specifically is sought and

---

[3] Plaintiffs' original list of non-custodial data sources contained eighteen sources and plaintiffs also requested that NPC produce from all fourteen sources that NPC listed in its September 21, 2020 letter.

Raymond C. Silverman
April 23, 2021
Page 5



how it is not already addressed by current or upcoming productions from the nine non-custodial sources from which NPC already has or will produce documents (or the custodial files which have been produced for fourteen custodians, or will be produced for additional employees).

We remain willing to work with plaintiffs' counsel to produce documents from relevant sources that are not duplicative, unduly burdensome to produce, and proportional to the needs of the case. If, after reviewing the productions plaintiffs have already received and will receive from non-custodial sources, plaintiffs believe there is something missing, then NPC remains ready and willing to confer. NPC is not willing to produce documents from any non-custodial source, however, that would not contain relevant information, would be unduly burdensome to produce, is duplicative, and is not proportional to the needs of the case.

Sincerely,

Elyse Shimada

cc:     Christopher Oxx, Esq.
        Harrison Biggs, Esq.
        Mark Ostrowski, Esq.