**BEFORE THE UNITED STATES JUDICIAL PANEL ON MULTIDISTRICT LITIGATION**

**In re** Tasigna Product Liability Litigation                    MDL No. 3006

**REPLY BRIEF IN SUPPORT OF PLAINTIFF'S MOTION TO TRANSFER OF ACTIONS PURSUANT TO 28 U.S.C. §1407**

## **INTRODUCTION**

Novartis cannot seem to get its story straight. It argues against centralization here because, among other reasons, it claims that case specific issues dominate over common ones, and that coordination will neither serve the convenience of the parties or result in a just and efficient resolution of the cases. But just over two months ago, Novartis took the exact opposite position when it moved a New Jersey state court to consolidate over 100 similar Tasigna products liability cases, arguing that the commonality of the issues and the efficiencies created by coordinated discovery warranted consolidation. *See* Ex. A, Novartis's Br. in Supp. of Mot. to Consolidate filed in the Superior Court of Morris County, New Jersey, at pp. 6-7.

Novartis cannot have it both ways. It was correct the first time—consolidation and coordination are in the best interests of the parties and the courts because of the overlapping common issues and the convenience and efficiencies that centralization affords. This is particularly true given that it is now a certainty that over 100 cases pending in New Jersey will be consolidated. Centralizing the federal cases is the only way to ensure an efficient coordination of the global Tasigna products liability litigation.

For these reasons, and the reasons discussed below, Plaintiff respectfully requests that his motion to transfer under 28 U.S.C. § 1407 be granted.

1

**ARGUMENT**

A. **Novartis Is Judicially Estopped from Opposing Centralization; at a Minimum, the Panel Should Disregard Its Indefensibly Inconsistent Position.**

Novartis's inconsistencies between its present opposition and its prior motion to consolidate are flagrant. In its New Jersey motion to consolidate, it claimed that consolidation was appropriate because there were common issues of fact across all cases, including general causation and Tasigna's labeling and regulatory history. Ex. A, at p. 6. But now it opposes consolidation because it claims that "case specific issues will dominate this litigation" and that "individual issues… predominate over the common factual issues claimed by plaintiffs." *See* Def.'s Br. at pp. 1, 14.

Similarly, in its New Jersey motion, Novartis argued forcefully that consolidating the cases in front of a single judge for discovery is both efficient and convenient:

> This would promote efficiency in the use of judicial resources as multiple judges would not have to hear and make rulings on the same issues. This would also promote convenience for the parties where there may be issues that can be resolved in a single instance, rather than multiple times in multiple cases.

*See* Ex. A, at p. 7. But here, Novartis argues that "centralization will not serve the convenience of the parties and witnesses and is unlikely to result in just and efficient conduct of the litigation." Def.'s Br. at p. 11.

These positions cannot be squared and show that Novartis is willing to take any position, no matter how inconsistent with prior ones, to gain what it perceives as a tactical advantage. In New Jersey, Novartis moved to consolidate in Morris County and used that attempted consolidation effort as its primary argument against plaintiffs' application for a multi-county litigation ("MCL") designation and transfer under the applicable New Jersey rules. *See* Ex. B, Novartis's opposition to application for a New Jersey MCL designation. For some reason,

Novartis saw a disadvantage to having the cases transferred to a different county under the MCL procedures, as opposed to remaining in Morris County. Here, however, Novartis deems it advantageous to litigate the federal cases in a fragmented, piecemeal fashion, and thus has taken an irreconcilable position against consolidation.

Novartis's current posture fails for several reasons. *First*, Novartis is barred by the doctrine of judicial estoppel from opposing consolidation based on arguments inconsistent with its prior motion to consolidate. The "doctrine of judicial estoppel prevents a party from asserting a claim in a legal proceeding that is inconsistent with a claim taken by that party in a previous proceeding." *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001). Its "purpose is to protect the integrity of the judicial process by prohibiting parties from deliberately changing positions according to the exigencies of the moment." *Id*. at 749-50.

The U.S. Supreme Court has stated that there is no specific set of circumstances or requirements to invoke the doctrine of judicial estoppel: "Courts have observed that the circumstances under which judicial estoppel may appropriately be invoked are probably not reducible to any general formulation of principle." *Id.* at 750 (internal quotations and citations omitted). Factors that "typically inform the decision whether to apply the doctrine in a particular case include whether a party's later position [is] clearly inconsistent with its earlier position"; "whether the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or the second court was misled"; and "whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped." *Id.* (citations and internal quotations omitted). The Court emphasized that by enumerating these factors, it did "not establish inflexible prerequisites or an

exhaustive formula for determining the applicability of judicial estoppel. Additional considerations may inform the doctrine's application in specific factual contexts." *Id.* at 751.

Novartis's overt gamesmanship here is precisely the type of conduct that judicial estoppel was designed to prevent. Novartis took the position of consolidation in New Jersey to secure an advantage—ostensibly to keep the cases in Morris County and outside of the New Jersey MCL process. But in the federal actions, Novartis believes it to be advantageous to litigate the cases in a fragmented fashion, and has thus taken an inconsistent position. Novartis has, at a minimum, created the appearance that the New Jersey court and/or the Panel have been misled, and is doing so to gain an unfair advantage that is detrimental to all Plaintiffs. The court should apply the doctrine of judicial estoppel to prevent this inequitable conduct.

*Second*, even if the doctrine of judicial estoppel does not conclusively bar Novartis's current inconsistent position, the Panel should disregard Novartis's disingenuous arguments against centralization as the hollow words of gamesmanship that they are. Novartis was absolutely correct when it argued in New Jersey state court that consolidation was appropriate because of the common issues of fact, and the efficiencies and conveniences that consolidation affords the parties and the court. Its words to the contrary now are the empty rhetoric of an overzealous advocate and should be disregarded.

**B.    Centralization Is Particularly Appropriate Given the Now Certainty of Consolidation in New Jersey.**

Novartis's motion to consolidate the New Jersey state court cases was recently heard and decided. The court held that it "agree[d] with Novartis that in the interest of judicial efficiency and fairness in the use of judicial resources, consolidation would be appropriate." *See* Ex. C, Order dated May 3, 2021, at p. 3. The court, however, denied the motion without prejudice because "[t]here is a *probability* that the MCL will granted, which would neutralize any consolidation

order." *Id.* (emphasis added). In the event that the MCL application is denied, the court held that the parties may submit a consent order for consolidation, or alternatively, refile a motion for consolidation on an expedited basis without the need for further submissions. *Id.* at p. 4. This means that in the near future over 100 Tasigna cases will be consolidated in New Jersey in some fashion.

This fact makes the case for consolidation here all the more compelling. In managing mass tort litigation such as this, "**[c]ooperation among state and federal judges is not only advised, it is advised often.**" *Dunlavey v. Takeda Pharms. Am., Inc.*, 2012 WL 3715456, at *2 (W.D. La. 2012) (emphasis in original). Indeed, "federal judges should communicate personally with state court judges who have a significant number of cases in order to discuss mutual concerns and suggestions." *Id.* (citing the *Manual for Complex Litigation* (Fourth) (the "*Manual*") § 20.311 (2004)). Thus, state and federal courts in mass tort actions have successfully coordinated on a variety of issues, including "aggregation and consolidation decisions, pretrial motions and hearings, pretrial discovery, settlement, and trial." *Id.* (citing the *Manual*, at § 20.314) (internal quotations omitted).

This important goal of federal and state coordination cannot be fully realized without first centralizing the federal cases. With consolidation of the New Jersey cases imminent, it would be a missed opportunity for the parties and the affected federal courts to maximize the efficiencies of a global coordination if the current application is denied and litigation of the current and future federal cases remains fragmented across various federal districts and judges.

Novartis argues that coordination is not necessary because the various plaintiffs are represented by one of three firms (Elias LLC, Onder Law, or Parker Waichman LLP). The cases they cite, however, are inapposite, because none of those cases involve a situation where over 100

parallel state court cases were consolidated before a single state judge. As Novartis concedes, "the Panel makes each of its decisions based on the circumstances presented by a particular litigation at the time." *See* Def.'s Br. at p. 10 (citing *In re Covidien Hernia Mesh Prods. Liab. Litig.*, 481 F. Supp. 3d 1348, 1349 (J.P.M.L. 2020)). We agree. Given the forthcoming New Jersey coordination, the circumstances presented by this litigation at this time warrant centralization of the federal cases.

C. **Novartis Exaggerates the Results of the Parties' Efforts at Informal Coordination.**

In its response, Novartis grossly inflates the results of the parties' efforts at informal coordination. The fact that the parties were able to reach agreement on a couple of foundational orders and that Novartis has been able to obtain Plaintiffs' medical records does not change the fact that little has been accomplished in the approximately 14 months since the first case was filed. Further, Novartis's slew of unilateral productions of limited documents made in the weeks before it filed its opposition does not change the fact that the only meaningful document production it has made to date was a re-production of documents from two cases which were previously resolved—documents which do not cover much of the relevant time period for the majority of Plaintiffs. Finally, the fact that Novartis has insisted on moving forward with fact depositions, in the face of opposition by Plaintiffs, only further supports the need for centralization.

The simple fact is that consolidation and establishment of a global discovery schedule is the best remedy to move these cases towards resolution. We agree with Novartis' sentiment expressed in its New Jersey motion to consolidate that "…consolidation would allow the parties to continue to efficiently capitalize on the significant progress made to date." *See* Ex. A. at p. 7.

**D.      Southern District of Illinois Remains the Best Suited Forum for Transfer.**

For the reasons stated in our opening brief, the best suited forum for transfer is the Southern District of Illinois, given its central location, proximity to two of the three law firms representing the majority of the plaintiffs in this action, and experience with mass tort MDL's such as this. Alternatively, Plaintiff agrees with the other interested Plaintiffs that New Jersey is a suitable second choice given the consolidation of the New Jersey state cases. *See* Br. of Interested Plaintiffs (Doc. No. 10), at pp. 7-8. The Middle District of Florida requested by Novartis, however, is not the most suitable forum. It is not centrally located, is not close to any of the lead counsel in these cases (who reside in St. Louis, Missouri and Port Washington, New York for the Plaintiffs, and Washington DC for Novartis), and, other than being the home district of three of the 18 federal Plaintiffs, has no nexus to the litigation as whole.

## CONCLUSION

For these reasons, Plaintiff respectfully request that its motion to transfer under 28 U.S.C. § 1407 be granted in full.

Dated: May 13, 2021                         Respectfully Submitted,

*/s/ Richard M. Elias*
Richard M. Elias
ELIAS LLC
231 S. Bemiston Ave, Suite 800
St. Louis, MO 63105
P: 314-391-6820
relias@eliasllc.com